UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

GOVERNMENTAL EMPLOYEES
INSURANCE CO.,

                              Plaintiff,

            - against -

OHIO CASUALTY GROUP, OHIO
CASUALTY INSURANCE COMPANY,
and LIBERTY MUTUAL COMPANY,

                              Defendants.

---------------------------------------------------------------x

**OPINION AND ORDER**

13-cv-3857 (ER)

Ramos, D.J.:

    This action arises out of a dispute between two excess insurance providers.  The

underlying personal injury claim settled, and that settlement was paid in full.  Multiple insurers

contributed to the settlement.  The question now before the Court is whether Plaintiff

Governmental Employees Insurance Co. ("Plaintiff" or "GEICO"), one of those insurers, is

entitled to reimbursement from a co-insurer that did not participate in the settlement.  Defendants

Ohio Casualty Group, Ohio Casualty Insurance Company and Liberty Mutual Insurance

Company[1] (collectively, "Defendants") never disclaimed coverage in the underlying action;

instead, they took the position that their insurance policy applies only to losses in excess of $10

million and that, because the underlying claim settled for less than that amount, Defendants'

coverage obligations were never triggered.

    GEICO disagrees, arguing that the two sides were required to contribute *pro rata* to the

satisfaction of the underlying claim.  GEICO thus brought suit against Defendants in New York

---
[1] This entity was incorrectly captioned as "Liberty Mutual Company" in the Notice of Removal that was filed with
this Court (Doc. 1), though the proper name appears in the body of that document.

State Supreme Court, New York County.  *See* Aff. of Marshall T. Potashner Ex. 1 ("Compl.").[2]

Defendants subsequently removed the case to this Court.  Doc. 1.  They now move to dismiss

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Doc. 5.  In addition to

arguing that the threshold for coverage under their policy was not reached, Defendants take the

position that, because they never consented to the settlement of the underlying claim, they are

not obligated to contribute to it.

The Court heard oral argument on Defendants' motion on July 18, 2014.  For the reasons

discussed below, that motion is hereby GRANTED.

## I.     Factual Background

The following facts are based on the allegations in the Complaint, which the Court

accepts as true for purposes of the instant motion.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141,

145 (2d Cir. 2012).

The underlying personal injury suit involved an automobile accident that occurred in

February 2008.  Compl. ¶ 14.  Defendants insured the owner of one of the vehicles, State

Bancorp, Inc. ("Bancorp").  *Id.* ¶ 15.[3]  That insurance policy, issued October 1, 2007, was an

excess policy with a $10 million policy limit.  *Id.* ¶ 22.  GEICO insured the driver, Brian

Finneran ("Finneran"), who was a Bancorp employee, pursuant to a personal umbrella policy

with a $3 million policy limit.  *Id.* ¶¶ 16, 23-25.

---

[2] A copy of the Complaint is also attached as Exhibit 1 to the Notice of Removal.

[3] The parties dispute whether Ohio Casualty Group and Liberty Mutual Insurance Company are properly named in the Complaint.  *See* Defs.' Mem. of Law in Supp. at 1 n.1; Pl.'s Mem. of Law in Opp'n at 2-3; Defs.' Reply Mem. of Law in Further Supp. at 1 n.2.  Given that the outcome of the instant motion renders the issue moot, the Court need not address it at the present time.

Bancorp's primary insurer, Utica National Insurance Company ("Utica National"), defended the state court action. *Id.* ¶ 27.  Bancorp also had a $10 million excess insurance policy through Utica Mutual Insurance Company ("Utica Mutual").  *Id.* ¶ 29.  Utica Mutual commenced a separate state court declaratory judgment action against GEICO, and the state court ruled that Utica Mutual's policy was excess to GEICO's.  *Id.* ¶ 30-31.  That decision was affirmed on appeal. *Id.* ¶ 34.

The underlying action settled for $6.75 million.  *Id.* ¶¶ 18, 35.  Utica National tendered its $1 million policy limit, and GEICO paid $2.95 million.  *Id.* ¶¶ 18, 36, 38.  Utica Mutual paid the balance.  *Id.* ¶ 39.  Defendants did not contribute.  *Id.* ¶ 19.

Plaintiff filed suit on the theory that Defendants are liable to contribute to the settlement because their policy, by its terms, does not negate contribution or indicate that it is excess to other excess insurance.  *Id.* ¶ 43.  More specifically, Plaintiff alleges that Defendants' policy fails to identify any other policy, including the Utica Mutual policy, to which it is excess.  *Id.* ¶ 44.[4] Plaintiff thus claims that Defendants' policy's "other insurance" clause governs and that, since that clause is "nearly identical to GEICO's 'other insurance' clause," the two carriers share the same tier of coverage and should have contributed *pro rata* to the settlement.  *Id.* ¶ 45.[5]

Plaintiff seeks declaratory relief and indemnification.  *Id.* ¶¶ 55-64.  Since Plaintiff's policy limit was $3 million and Defendants' was $10 million, Plaintiff demands indemnification

---

[4] As will be discussed below, the policy or policies occupying the lower tiers of coverage are to be listed in Item 5 of Defendants' policy's Declarations.  According to Plaintiff, "[t]here is no way to identify from this declaration which policy [Defendants] refer[] to in Item 5."  Compl. ¶ 44.

[5] Plaintiff also alleges that the premiums that the respective insurers charged for coverage demonstrate that Defendants' policy was not intended to serve as the final tier of coverage.  *Id.* ¶¶ 46-48.

in the amount of $2,269,230.77, or 10/13 of the amount it contributed to the settlement.  *Id.* ¶¶ 50-52.  Plaintiff also seeks to recover costs, including attorneys' fees, and interest.  *Id.* ¶ 64.

Defendants ask the Court to dismiss Plaintiff's Complaint in its entirety or, in the alternative, to dismiss that portion of the Complaint that seeks recovery of attorneys' fees.  Doc. 5.

## II.    Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch*, 699 F.3d at 145.  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79.  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

4

### III.    Discussion

The first issue confronting the Court is whether the plain terms of the insurance policy issued by Defendants preclude GEICO's claim.[6]  Defendants argue that their policy is not triggered until at least $10 million in losses have been paid.  *See* Defs.' Mem. of Law in Supp. at 10.  Since the underlying personal injury action settled for less than that amount, Defendants' interpretation of the disputed language would bar the claim for indemnification brought against them.

Given the procedural posture of the case, the Court's ruling on this issue turns on a determination as to whether the policy language in question is ambiguous.  *See Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (citing *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)) (noting that contractual ambiguities should be resolved in the plaintiff's favor in the context of a Rule 12(b)(6) motion); *see also D.C. USA Operating Co., LLC v. Indian Harbor Ins. Co.*, No. 07 Civ. 116 (CM), 2007 WL 945016, at *8 (S.D.N.Y. Mar. 27, 2007) ("[W]hen considering a motion to dismiss, courts should resolve any contractual ambiguities in favor of the plaintiff without resorting to parol evidence." (citing *Subaru*, 425 F.3d at 122)).

"New York law treats an insurance policy as a contract and construes it in accordance with general contract principles."  *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc.*, 265 F.3d 97, 103 (2d Cir. 2001)).  The question of whether a contract is ambiguous is to be determined as

---

[6] Defendants' policy is properly before the Court on a Rule 12(b)(6) motion because "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

matter of law.  *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011).  "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'"  *Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 950 N.Y.S.2d 8, 11 (N.Y. App. Div. 2012) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)), *aff'd*, 987 N.E.2d 631 (N.Y. 2013).  Conversely, a contract is ambiguous where its language is susceptible to multiple reasonable interpretations.  *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011).  Ambiguity will not be found "where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'"  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (alteration in original) (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957)).

    The Court thus starts with the plain language of Defendants' policy and concludes that the disputed language unambiguously provides that the policy applies in excess of a $10 million underlying limit.[7]  The policy states, in multiple locations but with slight variations in the wording, that it is excess to the "underlying limits of insurance" set forth in Item 5 of the Declarations.  *See* Aff. of Marshall T. Potashner Ex. 2 (the "Ohio Policy"), at 7 of 25, 11 of 25, 12 of 25.[8]  The phrase "underlying limits of insurance" is defined as "the total sum of the limits of all applicable 'underlying insurance' stated in Item 5. of the Declarations, including self-insurance, or means other than insurance."  *Id.* at 14 of 25.  "Underlying insurance," in turn, is

---

[7] Because this determination is dispositive as to the viability of GEICO's claim, the Court need not reach the question of whether Defendants can be forced to contribute to a settlement to which they did not consent.

[8] The statement appears twice on page 12 of 25, in sections I and II.B.1.

6

defined as "'first underlying insurance' and all policies of insurance listed in Item 5. of the

Declarations." *Id.* "'First underlying insurance' means the policy or policies of insurance stated

as such in Item 5. of the Declarations." *Id.* Thus, when the multilayered definitions are read

together, the policy can be understood as being excess to the sum of the policy limits of the

policy or policies listed in Item 5.

Item 5 lists just one insurance policy, as follows:

**(ITEM 5) UNDERLYING INSURANCE**

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF COVERAGE | LIMITS OF INSURANCE | |
|---|---|---|---|
| FIRST UNDERLYING INSURANCE TO BE FURNISHED | LEAD UMBRELLA | **$10,000,000** | EACH OCCURANCE |
| | | **$10,000,000** | AGGREGATE |
| | | **$10,000,000** | PRODUCTS - COMPLETED OPERATIONS AGGREGATE |
| TO BE FURNISHED 09/30/2007 - 09/30/2008 | | | |

*Id.* at 8 of 25. Thus, the plain terms of the policy provide that it covers losses in excess of $10

million.[9]

In attempting to identify an ambiguity in the policy, GEICO relies on the fact that Item 5

does not identify a *specific* lead umbrella policy to which it is referring. *See, e.g.*, Pl.'s Mem. of

Law in Opp'n at 5. While GEICO is correct that the carrier name and the policy number are

omitted from the Declaration, that alone is insufficient to render the provision ambiguous when

read in light of the policy as a whole.[10] As discussed, the definitions clearly provide that

---

[9] The applicable underlying limit could theoretically be less than $10 million if prior losses cut into the aggregate amount available under the underlying policy. *See* Ohio Policy at 12 of 25. However, since GEICO's position is that Item 5 did not identify *any* insurance policy over which Defendants' policy is excess, any exhaustion argument is inapposite. GEICO, whose Complaint sets forth the universe of applicable policies and their respective limits, neither alleges nor argues exhaustion as a basis for its claim.

[10] The Court cannot credit GEICO's suggestion that the absence of a carrier name and policy number renders the policy in Item 5 a "nullity," such that "no policy of insurance is 'listed,' 'stated,' or 'shown,'" in that portion of the

Defendants' policy is excess to the *limits* identified in Item 5, not to any one specific underlying policy.  Indeed, Condition VI.G, "Maintenance of Underlying Insurance," requires the insured "to keep the policies listed in Item 5. of the Declarations in full force and effect" and to maintain the policy limits listed in Item 5.[11]  Ohio Policy at 15 of 25.  If the insured does not comply with that condition, Defendants' liability is limited as though the insured *had* complied.  *Id.*  This Court has examined a similar provision in the past, noting that such language speaks to situations in which the insured "fail[s] to maintain underlying insurance" and that it "expressly demonstrates that the coverage provided by the [excess insurance policies at issue] will not be enlarged to compensate for gaps in underlying coverage."  *Fed. Ins. Co. v. Estate of Gould*, No. 10 Civ. 1160 (RJS), 2011 WL 4552381, at *5 (S.D.N.Y. Sept. 28, 2011), *aff'd sub nom. Ali v. Fed. Ins. Co.*, 719 F.3d 83 (2d Cir. 2013).  In other words, even if the insured fails to maintain any lead umbrella policy with a $10 million policy limit, Defendants are still liable only for losses in excess of $10 million.[12]

Thus, even assuming, *arguendo*, that GEICO is correct regarding *priority* of coverage (*i.e.*, assuming that Utica Mutual's policy occupies the tier above Defendants' policy),[13] this

---

Declaration.  Pl.'s Mem. of Law in Opp'n at 7.  The description provided is certainly not "vague to the point of meaninglessness," *id.* at 8, and the fact that it is, at worst, *incomplete* does not mean it can be ignored.

[11] There is again an exception for reduction or exhaustion of the aggregate limit on account of prior losses.  Ohio Policy at 15 of 25.  As discussed, however, that consideration is not at issue in the present case.

[12] At oral argument, GEICO argued that there could be "an inference that a policy was being examined that was eventually rejected, wasn't purchased."  Oral Arg. Tr. at 28:21-28:23.  This argument is self-defeating for the reasons discussed.

[13] The validity of this assumption is far from clear.  GEICO takes the position that a "[f]ailure to identify a specific policy over which a policy is excess results in the policy being viewed as a general excess policy."  Pl.'s Mem. of Law in Opp'n at 7.  The case GEICO cites in support of this proposition examined a policy that expressly indicated that it was excess over all other policies unless one of those other policies was specifically intended to apply in excess to it.  *See Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 469 (N.Y. App. Div. 2008).  In other words, the policy was designed to occupy the highest tier of coverage unless another policy was purchased

does not alter the fact that Defendants' policy itself only operates above the designated underlying limit. GEICO's emphasis on the "other insurance" provision is therefore misplaced, as that provision is expressly directed at situations where "other insurance applies to a 'loss' that is also covered by [Defendants'] policy." Ohio Policy at 16 of 25. In other words, the "other insurance" clause only becomes relevant at all if there is a covered loss in the first instance. By focusing exclusively on priority of coverage, GEICO begs this threshold question. Defendants prevail not because their policy is "excess to another policy that may or may not exist," Pl.'s Mem. of Law in Opp'n at 8, but rather because their policy is excess to an underlying limit that applies *regardless* of whether Item 5's contemplated lead umbrella policy actually exists.[14]

The plain language of Defendant's policy clearly establishes that it provides coverage only in excess of an underlying $10 million limit. Therefore, because the underlying claim settled for less than that amount, GEICO's claim for indemnification fails as a matter of law.

## IV.   Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. To the extent Defendants seek to recover costs other than attorneys' fees pursuant to Federal Rule of

---

specifically to be excess over it. There was no evidence that the second policy at issue in *Bovis* met that criteria, and thus this second policy was held to be primary to the first. *See id.* However, the state court suggested that the outcome in *Bovis* may have been different had the second policy at least included a reference to the first policy's *limit*, even if the policy itself was not specifically named. *See id.* Defendants' position is that Item 5 of their policy does precisely that with respect to the Utica Mutual policy. *See* Defs.' Mem. of Law in Supp. at 10-11.

[14] The error in GEICO's reasoning is highlighted by their treatment of the "Maintenance of Underlying Insurance" condition. *See* Pl.'s Mem. of Law in Opp'n at 7. GEICO argues that, under Defendants' interpretation of Item 5, this condition would require the insured "to maintain an unnamed, unidentified policy in order to retain coverage." *Id.* This premise is incorrect for two reasons. First, Item 5 does not require that the insured maintain any one particular "unnamed, unidentified" lead umbrella policy; it simply requires that the insured maintain *a* lead umbrella policy that matches the description provided. Second, non-compliance does not result in a waiver of coverage; it simply results in Defendants' liability being limited "to the same extent that [it] would have been had [the insured] fully complied." Ohio Policy at 15 of 25.

Civil Procedure 54(d)(1), *see* Defs.' Reply Mem. of Law in Further Supp. at 10, they are directed

to Local Civil Rule 54.1.

   The Clerk of the Court is respectfully directed to terminate the motion (Doc. 5) and to

close this case.

It is SO ORDERED.

Dated:  September 3, 2014
    New York, New York

                  _____
                  Edgardo Ramos, U.S.D.J.